Tyrone DOTSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–99–00126–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Aug. 2, 2000.

Decided Aug. 3, 2000.

Opinion Overruling Rehearing
Sept. 7, 2000.

Ebb B. Mobley, Longview, for appellant.

C. Patrice Savage, Asst. Dist. Atty., Longview, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

Tyrone Dotson appeals from his conviction for robbery enhanced by two prior felony convictions. The jury assessed his punishment at life imprisonment.

Dotson was convicted of robbing a bank. His conviction was based on identification testimony by Luisa Sanchez, the bank teller who was robbed; by the driver of the car in which he came to the bank;[1] and through the use of a bank videotape. Dotson was arrested shortly thereafter. Based on bank records, Dotson was accused of robbing the bank of $9,100. Officers recovered $5,000 in cash.

Dotson contends on appeal that the trial court erred by overruling his Motion for New Trial. The motion was based on newly discovered evidence that the teller, Sanchez, had admitted embezzling from the bank for two to three years prior to the robbery. She testified at the hearing on the Motion for New Trial that, at the time of the robbery, her cash drawer was $4,100 short. Thus, the robber actually only obtained $5,000 instead of the $9,100 that bank records indicated he had taken.

To obtain a new trial because of newly discovered evidence, an appellant must show: (1) the newly discovered evidence was unknown to the movant at the time of trial; (2) the failure to discover the evidence was not due to his want of diligence; (3) the evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the evidence is probably true and would probably bring about a different result in another

---

1. The driver was not charged with robbery. He was apparently shocked when Dotson, who had asked for a ride to the bank, came out with thousands of dollars, and the man refused to drive away with Dotson in the car. Dotson ran into a wooded area while the driver waited in the parking lot for the police to arrive.

trial. *Moore v. State,* 882 S.W.2d 844, 849 (Tex.Crim.App.1994); *Tuffiash v. State,* 948 S.W.2d 873, 879 (Tex.App.-San Antonio 1997, pet. ref'd).

■ The granting or denying of a motion for new trial is within the discretion of the trial court. We do not substitute our judgment for that of the trial court, but rather decide whether the trial court's decision was arbitrary or unreasonable. *Lewis v. State,* 911 S.W.2d 1, 7 (Tex.Crim. App.1995); *State v. Gonzalez,* 855 S.W.2d 692, 699 (Tex.Crim.App.1993). Motions for new trial based on newly discovered evidence are not favored by the courts and are viewed with great caution. *Drew v. State,* 743 S.W.2d 207, 225–26 (Tex.Crim. App.1987).

The evidence at the hearing shows that, at the time of trial, neither the defense nor the State was aware of Sanchez's embezzlement. This meets the first prong of the test. The evidence also shows that it came to light only as a result of a federal investigation and her admission of her actions, and that her actions had been undetected by the bank for a number of years. The trial court concluded, and we agree, that the failure to discover Sanchez's embezzlement was not due to a want of diligence by defense counsel. This meets the second requirement of the test.

The evidence about the teller's embezzlement would have been admissible to show the amount of money actually stolen by the robber. It would likely have also been independently admissible as impeachment, although purely impeachment evidence will not justify a new trial. Thus, the first three prongs of the review have been met, as has the first portion of the fourth prong. The only remaining question is whether the evidence would probably bring about another result in a new trial.

The amount of money taken in the robbery is not the critical factor in determining Dotson's guilt for this crime. The issue is the identification of Dotson as the individual who committed the crime. As the trial judge recognized, Dotson was identified not only based on Sanchez's testimony, but also through the testimony of his driver and the videotape taken by the bank's security cameras. In addition, in his testimony, Dotson admitted committing the robbery, but stated that he did so only because he had been threatened by two other men. Because of the strong and convincing nature of the other evidence that Dotson was the perpetrator of the crime, we find that the trial court did not abuse its discretion by concluding that the new evidence would not probably bring about a different result in another trial and overruling the motion for new trial.

■ However, when an appellate court finds that there was reversible error committed at the punishment stage of the trial, the defendant is entitled to a new trial on punishment only. Tex.Code Crim. Proc. Ann. art. 44.29(a), (b) (Vernon Supp.2000); *Rent v. State,* 982 S.W.2d 382, 385 (Tex. Crim.App.1998). Counsel also contends within this point of error that the punishment decision made by the jury (which sentenced Dotson to the maximum punishment) would have been affected if this evidence had been available.[2] Although the matters set out above would not justify granting a new trial on guilt/innocence, we must examine the impact on the punishment phase of trial.

■ The State argued at the guilt/innocence phase that Dotson had only turned over a part of his take from the robbery and suggested that, during the very short time that he had escaped on foot, he had somehow hidden the money and refused to

---

**2.** A court of appeals can reverse a case for a new trial on punishment only. However, a trial court does not have authority to grant a new trial as to punishment only, even if judicial economy would be well served thereby.

*State v. Hight,* 907 S.W.2d 845, 846 (Tex. Crim.App.1995); *State v. Bates,* 889 S.W.2d 306 (Tex.Crim.App.1994). We recommend the Legislature consider giving the trial courts this authority.

reveal its location. Sanchez testified that Dotson had told her that he knew her face, and if she identified him, turned him in, or called the police, he would come back for her.

Counsel argues that her uncorroborated testimony about a threat might have been disregarded by a jury if it had been aware that she was also stealing from the bank. That testimony was reiterated to the jury by the prosecutor during argument. The State also re-elicited testimony concerning the fact that there was a discrepancy between the amount stolen and the amount recovered in the context of discussing the cooperation of the defendant with police.

■ To determine whether this constitutes reversible error under the new Rules of Appellate Procedure, we are to disregard errors, defects, irregularities, or variances that do not affect substantial rights of the accused. TEX.R.APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. TEX.R.APP. P. 44.2(b); *King v. State,* 953 S.W.2d 266 (Tex.Crim.App. 1997). If, on the record as a whole, it appears the error "did not influence the jury, or had but a slight effect," we must consider the error harmless and allow the conviction to stand. *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998). The Texas Court of Criminal Appeals has held that, in order to make this determination, we must decide whether the error had a substantial or injurious effect on the jury's verdict. *Llamas v. State,* 12 S.W.3d 469, 471 n. 2 (Tex.Crim.App.2000).

After reviewing the record and the newly discovered evidence, and considering the potential for harm that it might have (even factoring in the multiple prior offenses proven by the State), we conclude that there is a measurable probability that these circumstances had a substantial or injurious effect on the jury's verdict. Accordingly, we remand the cause to the trial court for a new punishment proceeding, pursuant to TEX.CODE CRIM. PROC. ANN. art. 44.29(b).

■ Dotson next contends that there is legally insufficient evidence to prove that his prior conviction in Louisiana for "illegal possession of stolen things" is a felony that can be used to enhance his punishment. He contends that, because the record of the Louisiana conviction reflects that the stolen item was valued at between $50 and $500, the conviction under Texas law would only be a Class B misdemeanor. TEX. PEN.CODE ANN. § 31.03(e)(2) (Vernon Supp. 2000). Therefore, he argues, even though Louisiana labeled the crime a felony, it should be treated in accordance with the way it would be categorized in Texas-a misdemeanor.

The state of the law in Texas on this issue is not entirely clear. In *Ex parte Blume,* 618 S.W.2d 373 (Tex.Crim.App. 1981), the court reviewed a similar claim and determined that a felony federal conviction could be used for enhancement, even though the crime would not have been a felony under Texas law. In its reasoning, the court relied on TEX. PEN. CODE ANN. § 12.41 (Vernon 1994), which provides a statute designed to deal with classification for enhancement purposes of a conviction obtained outside the Penal Code. The statute provides that

> For purposes of this subchapter, any conviction not obtained from a prosecution under this code shall be classified as follows:
>
> (1) "felony of the third degree" if imprisonment in a penitentiary is affixed to the offense as a possible punishment;
>
> (2) "Class B misdemeanor" if the offense is not a felony and confinement in a jail is affixed to the offense as a possible punishment. . . .

TEX. PEN.CODE ANN. § 12.41. The court in *Blume* observed that the federal conviction was available for enhancement because the defendant could have been confined to a penitentiary as a possible punishment.

Similarly, in *Cain v. State*, 721 S.W.2d 493 (Tex.App.–Houston [1st Dist.] 1986, no pet.), the Houston court reviewed a negligent homicide conviction that was a felony under Louisiana law, but would have been a Class A misdemeanor in Texas. In that case, the defendant had been sentenced to time in a parish prison, and he argued that it was in fact the equivalent of a county jail in Texas, he was not imprisoned in a penitentiary. The Houston court recognized that Louisiana does not distinguish felonies from misdemeanors based on the institution where confinement is ordered. Indeed, as a Louisiana prosecutor testified in this case, there is no distinction drawn between parish and state jails, and felony offenders often serve their time in parish facilities.

The court in *Cain* mentioned the length of time that the defendant had been sentenced in its analysis, but then concluded that it was appropriate to determine whether the crime involved was a felony based on the intent of the Louisiana statute as explained by the Louisiana prosecuting attorney. Based solely on that evidence, the court concluded that the criminal act was clearly intended by Louisiana to be a felony offense and allowed the enhancement to stand.

We are here confronted with much the same situation, with the exception that our record does not reveal the potential length of sentence for the particular crime at issue. A Louisiana prosecutor testified at some length about the nature of this particular crime, acknowledging that the dollar amounts necessary to create a felony are substantially lower in Louisiana than in Texas. Nevertheless, it is clear that the State of Louisiana intended to make this type of crime a felony, and in relation to its system did so.

We agree with the reasoning of the *Cain* opinion, and we likewise conclude that this offense was a felony for enhancement purposes. The contention of error is overruled.

The conviction is affirmed. The punishment determination is reversed and remanded to the trial court for a new trial on punishment only.

### OPINION ON REHEARING

On rehearing, the State contends that the evidence that the teller had embezzled a portion of the money alleged to have been taken in the robbery could not be used as impeachment evidence against the teller. The State urges that this evidence falls under Rules of Evidence 607, 608, and 609 governing impeachment by opinion or reputation showing the witness's character for untruthfulness.

There are numerous ways that a witness can be impeached that do not pertain to character, i.e., inability to observe the matter about which the witness testified, their motive for testifying against another party, and the list goes on. *See Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim.App.1996). Inconsistent statements about the matter on trial can be used to impeach. *Virts v. State*, 739 S.W.2d 25, 29 (Tex.Crim.App.1987); *Roberts v. State*, 963 S.W.2d 894, 901 (Tex.App.-Texarkana 1998, no pet.). In the present case, the statement by this witness about the amount of money taken in the robbery could be shown to be inaccurate because of this witness's embezzlement. This evidence went to one of the basic elements in the case. It was not a collateral matter involving a character trait of the witness of the lack of truth and veracity. It could be used to show an inaccuracy of her testimony in this case, which the jury could consider, and also would tend to demonstrate that Dotson did not secret and fail to return some of the money taken in the robbery. This testimony is more than impeachment, it goes directly to one of the elements of the case.

The motion for rehearing is overruled.