

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00196-CR

_____

WILLIAM JOSEPH HARRISON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd Judicial District Court
Bowie County, Texas
Trial Court No. 11F0252-102

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

William Joseph Harrison appeals his conviction for assault (family violence) by occlusion, enhanced by two prior felony convictions.[1] TEX. PENAL CODE ANN. § 12.42 (West Supp. 2011), § 22.01(b)(2)(B) (West 2011). The State alleged Harrison choked his girlfriend, Emily Cochran, during a domestic dispute. Cochran and Harrison were residing together at the time of the assault. At trial, Cochran testified that Harrison put his hands around her throat and that she could not breathe. The trial court denied a lesser included offense instruction on assault, and a jury found Harrison guilty of assault (family violence) by occlusion. Harrison elected to have the trial court assess punishment. At punishment, the State introduced numerous prior convictions, as well as evidence that Harrison had connections with the Aryan Circle. The trial court sentenced Harrison to forty-five years' imprisonment. Harrison appeals, arguing that the State failed to provide him adequate notice of the enhancement paragraph, requesting this Court to reform the judgment to reflect the correct degree of the offense, and alleging the trial court erred in denying his requested lesser included offense of assault. We affirm, as modified, the judgment of the trial court.

I.     The Notice of Enhancements

In his first issue, Harrison complains that the State's notice of intent to enhance punishment provided inadequate notice. According to Harrison, the State failed to allege the two prior convictions were sequenced, or in other words, that the second conviction was committed after the

_____

[1]In a companion case, our cause number 06-11-00175-CR, the appeal of which is also decided today, Harrison was convicted of unlawful possession of a firearm by a felon and received a sentence of twenty years' imprisonment.

2

first conviction became final. The State argues the issue has not been preserved for our review, the notice provided was sufficient, and the error failed to result in any harm.

The indictment alleged only one prior felony conviction. Prior to trial, though, the State provided the defense with a document titled "State's Notice of Intent to Seek Enhanced Punishment," which alleges as follows:

> 4. Specifically, the State intends to present evidence that prior to the commission of the aforesaid offense, WILLIAM JOSEPH HARRISON, was finally convicted of the felony offense of BURGLARY OF HABITATION in the 5th District Court of Cass County, Texas, in cause number 96-F-008, on September 13, 2001.

> 5. Further, the State intends to present evidence that the defendant, prior to the commission of the aforesaid offense, and after the conviction in cause number 96-F-008 was final, the defendant, WILLIAM JOSEPH HARRISON, was finally convicted of the felony offense of MANUFACTURE, DELIVERY OR POSSESSION OF A CONTROLLED SUBSTANCE in the Circuit court of Miller County, Arkansas, in cause number CR2008-291, on August 4, 2009.

This notice further advises that proof of these convictions would increase the range of punishment to not more than ninety-nine years' and not less than twenty-five years' imprisonment. Harrison points out that this enhancement allegation merely alleges Harrison was **convicted** of the second felony offense after his conviction for the first felony offense became final. It is well established that Texas law requires the second felony offense to be **committed** after the conviction for the first felony offense becomes final. *See* TEX. PENAL CODE ANN. § 12.42(d); *Hickman v. State*, 548 S.W.2d 736, 737 (Tex. Crim. App. 1977); *Jordan v. State*, 256 S.W.3d 286, 291 (Tex. Crim. App. 2008) ("The State carries the burden of proving beyond a reasonable doubt that a

3

defendant's second previous felony conviction was committed after the defendant's first previous felony conviction became final.").

At the punishment hearing, the State repeated the mistake. The following allegations were read:

> [Prosecutor]: Prior to the commission of the aforesaid offense, William Joseph Harrison, was finally convicted of the felony offense of burglary of a habitation in the 5th District Court of Cass County, Texas, in Cause Number 96F-008 on September 13th, 2001.
>
> . . . .
>
> THE COURT: Is there a second enhancement paragraph?
>
> MS. CRISP: Yes, sir. Prior to the commission of the aforesaid offense and after the conviction in Cause Number 96F-008 was final, the Defendant, William Joseph Harrison, was finally convicted of the felony offense of manufacture, delivery, or possession of a controlled substance in the Circuit Court of Miller County, Arkansas, in Cause Number CR2008-921 on August 4th, 2009.

As in the companion case, Harrison did not object to any lack of notice when the enhancement allegation was read. When the State introduced a copy of the Cass County judgment, Harrison's sole objection was that the document was hearsay.[2] When the State offered a "certified copy" of

---

[2]Harrison claimed the judgment does "not appear to be a self-authenticated judgment." The trial court overruled the objection, and Harrison has not argued the judgment was incorrectly admitted into evidence on appeal.

4

the Arkansas[3] judgment, Harrison stipulated it was admissible.[4]  The judgments established that the second felony offense was committed after the first felony conviction became final.[5]

The State argues this issue has not been preserved for appellate review.  Harrison cites *Luken v. State*, 780 S.W.2d 264, 267 (Tex. Crim. App. 1989), *modified on other grounds by Ex parte Minott*, 972 S.W.2d 760 (Tex. Crim. App. 1998), for the proposition that an objection is not required.

Unlike Luken, Harrison was made aware that the State would attempt to enhance his punishment by two prior convictions and was notified the punishment range would be from twenty five to ninety-nine years' imprisonment.  We also note that *Luken* predates *Marin v. State*, 851 S.W.2d 275, 279–80 (Tex. Crim. App. 1993), *modified in part by Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997).  *Marin* held "our system may be thought to contain rules of three distinct kinds:  (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be

---

[3]TEX. PENAL CODE ANN. § 12.41 (West 2011); *Tucker v. State*, 136 S.W.3d 699, 701 (Tex. App.—Texarkana 2004, no pet.) (whether conviction from another state is felony depends on intent of legislature of sister state to make crime a felony).

[4]Harrison's attorney stated, "[W]e're willing to stipulate that is actually a raised seal judgment.  So I've already indicated to the State that we'll stipulate to that one."

[5]We note that the Texas Court of Criminal Appeals has held it is not necessary to allege a conviction is final.  *Jones v. State*, 711 S.W.2d 634, 635 (Tex. Crim. App. 1986), *modified sub silencio on other grounds by Bell v. State*, 994 S.W.2d 173, 175 (Tex. Crim. App. 1999).  Once the State provides prima facie evidence of an enhancement conviction, we will presume that a conviction is final when faced with an otherwise silent record.  *Fletcher v. State*, 214 S.W.3d 5, 8 (Tex. Crim. App. 2007) (noting presumption of finality but, if record indicates appeal was taken, recognizing State must introduce mandate or otherwise prove beyond a reasonable doubt the conviction is final).  There is nothing in the record to indicate any of these convictions were appealed.  *See Beal v. State*, 91 S.W.3d 794, 796 (Tex. Crim. App. 2002) (conviction becomes final on date appellate court issues mandate).

implemented upon request." *Marin*, 851 S.W.2d at 279; *Cain*, 947 S.W.2d at 264. We have found no authority indicating that alleged defects in notice of enhancement allegations, in a situation where the defendant was clearly on notice that enhancement was being pursued, cannot be forfeited. We find Harrison failed to preserve his claim of an inadequate notice of the enhancement allegations.

Even if the issue had been preserved, we would find the notice provided in the enhancement allegations was sufficient. In *Gutierrez v. State*, the Texas Court of Criminal Appeals held that the State must allege "each succeeding conviction be subsequent both in point of time of the commission of the offense and the conviction therefor." 555 S.W.2d 457, 458 (Tex. Crim. App. 1977). The allegation, though, is not required to be perfect and a substantially correct allegation may be sufficient. *See Fitzgerald v. State*, 722 S.W.2d 817, 822 (Tex. App.—Tyler 1987), *aff'd*, 782 S.W.2d 876 (Tex. Crim. App. 1990).

It is not necessary to allege enhancements with the same specificity as used in charging on the primary offense. *See Freda v. State*, 704 S.W.2d 41, 42 (Tex. Crim. App. 1986). Whether an enhancement allegation is sufficient depends on whether a defendant could be misled by the erroneous allegation. *See Hollins v. State*, 571 S.W.2d 873, 877 (Tex. Crim. App. 1978); *Cooper v. State*, 500 S.W.2d 837, 839 (Tex. Crim. App. 1973). The test is whether the description is sufficient to enable the defendant to find the record and prepare for trial. *Villescas v. State*, 189 S.W.3d 290, 293 (Tex. Crim. App. 2006) (citing *Hollins*, 571 S.W.2d at 875); *see Hughen v. State*,

265 S.W.3d 473, 477 n.3 (Tex. App.—Texarkana 2008), *aff'd*, 297 S.W.3d 330 (Tex. Crim. App. 2009).

In this case, the errors in the enhancement allegations did not mislead or in any way inhibit Harrison's preparation of a defense. The description contained sufficient details to enable Harrison to find the prior convictions. Although the State incorrectly alleged conviction of the second offense when it should have alleged commission of the second offense, the description expressed an explicit allegation of sequence of the prior offenses. Harrison could not have been misled that the State was merely alleging multiple felonies in hopes of proving at least one prior felony conviction. There is no ambiguity that the State was seeking to invoke TEX. PENAL CODE ANN. § 12.42(d). As such, the incorrect allegation of conviction instead of commission did not render the notice description insufficient.[6]

The Texas Court of Criminal Appeals has disavowed any "special significance to the time period of ten days" and held the determination of whether adequate notice was given, an issue of constitutional due process, does not require that the notice be given within a particular time period. *Villescas*, 189 S.W.3d at 292. The court has noted "due process does not even require that the notice be given before the guilt phase begins, much less that it be given a number of days before trial. *Id*. When the defendant does not have any defense to the enhancement allegations and does not request a continuance in order to prepare a defense, notice given at the beginning of the

---

[6]Harrison has not challenged the sufficiency of the evidence supporting the enhancements. *See Young v. State*, 14 S.W.3d 748, 751 (Tex. Crim. App. 2000) (evidentiary sufficiency of enhancements based on hypothetically correct jury charge); *see also Freda*, 704 S.W.2d at 43 (material variance must surprise defendant to his or her prejudice).

punishment phase satisfies due process. *Id*. at 294–95 (citing *Oyler v. Boles*, 368 U.S. 448 (1962)). In making our determination, we must "look to the record to identify whether appellant's defense was impaired by the timing of the State's notice." *Pelache v. State*, 324 S.W.3d 568, 577 (Tex. Crim. App. 2010).

Harrison did not object at trial to the lack of notice or request a continuance. The State's notice of intent to seek enhancement provided Harrison with approximately seventeen days' notice and contained an allegation sufficient to inform Harrison of the State's intent to establish that the two prior convictions were sequenced. Harrison has not alleged any defense to the enhancement allegations that he was prevented from developing.

We overrule Harrison's first issue.

## II. The Nunc Pro Tunc Judgment

Harrison elected to allow the trial court to assess punishment. A punishment trial was conducted which included proof that Harrison had been convicted of two prior felony offenses. The underlying offense was assault (family violence) by occlusion, a third degree felony. TEX. PENAL CODE ANN. § 22.01(b)(2)(B). At the conclusion of the hearing, the trial court found that the enhancement allegations were true, which elevated the range of punishment to a minimum of twenty-five years and a maximum of ninety-nine years. TEX. PENAL CODE ANN. § 12.42(d). Punishment and sentence was assessed by the trial court at forty-five years' imprisonment.

8

The judgment recited that the offense was a first degree felony, rather than a third degree felony with enhanced punishment. After the record on appeal was filed in this Court, the trial judge corrected the judgment by entering a judgment nunc pro tunc to correctly reflect the judgment rendered in open court.[7] Harrison alleges that the judgment is incorrect and must be modified, while the State urges that the judgment is now proper. The State argues the nunc pro tunc order corrected any error.

Rule 25.2(g) suspends any further proceedings in the trial court once the record has been filed on appeal except as provided otherwise by law or rules. TEX. R. APP. P. 25.2(g). The nunc pro tunc judgment was entered March 8, 2012, three months after the record for appeal was filed in this Court. At the time the judgment nunc pro tunc was entered, the trial court had lost jurisdiction; consequently, the order is void. *Green v. State*, 906 S.W.2d 937, 939 (Tex. Crim. App. 1995).

This Court has authority to modify the judgment to make the record speak the truth when the matter has been called to our attention by any source. *French v. State*, 830 S.W.2d 607 (Tex. Crim. App. 1992). We modify the judgment to provide that Harrison was convicted of a third degree felony enhanced by two prior felony convictions.

---

[7]We note the State attached the judgment nunc pro tunc to its brief as an exhibit. Attaching a document to an appellate brief is not a permissible method of supplementing an appellate record. "We cannot consider documents, that are not part of the record, attached as appendices to briefs." *Paselk v. Rabun*, 293 S.W.3d 600, 612 n.12 (Tex. App.—Texarkana 2009, pet. denied); *WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 465 n.23 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Because this Court has a concurrent obligation with the parties to ensure the record is timely filed, we requested a supplementation from the district clerk. *See* TEX. R. APP. P. 35.3.

**III.    The Lesser Included Offense Instruction of Assault Family Violence**

Finally, Harrison contends in his third issue[8] that the trial court committed reversible error by denying his requested instruction on the lesser included offense of class A misdemeanor assault.    At trial, Harrison requested an instruction on "assault causing family violence in a normal context, the class A misdemeanor."   The trial judge stated that he was denying the request because occlusion does not contain the requirement of bodily injury.   Harrison argues on appeal that the trial court committed reversible error in denying the lesser included offense instruction.

The Texas Court of Criminal Appeals has set forth a two-step analysis to determine whether a defendant is entitled to a lesser included offense instruction.   *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Jones v. State*, 241 S.W.3d 666, 670 (Tex. App.—Texarkana 2007, no pet.); *cf. Grey v. State*, 298 S.W.3d 644, 645 (Tex. Crim. App. 2009) (discussing test when State requests lesser included instruction).   Under the "cognate-pleadings" test, as set forth in *Hall*, the first step concerns whether a lesser included offense exists based on a comparison of the greater offense, as contained in the charging document, and the lesser offense without looking to the evidence adduced in that particular case.   *Hall*, 225 S.W.3d at 526; *Jones*, 241 S.W.3d at 670.   "This is a question of law, and it does not depend on the evidence to be produced at trial." *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011).   Only after the first step is answered positively do we proceed to the second step of conducting an inquiry concerning whether there was

---

[8]In the issues presented section of Harrison's brief, this issue is listed as "Issue 3," but it is briefed as "Issue 2."   We will refer to it as it is listed in the issues presented section.

sufficient evidence at trial to have required the court to submit to the jury the issue of the lesser included offense.  *Jones*, 241 S.W.3d at 670–71.

The State argues the elements of the lesser included offense are not the same as or less than the charged offense because assault (family violence) by occlusion does not require bodily injury. According to the State, the Texas Legislature "intended that the offense of assault family violence by occlusion be punishable when strangulation occurred, not merely when bodily injury is present."  The State directs our attention to the The House Research Organization's Bill Analysis which states that "[i]t can be difficult to prove bodily injury or serious bodily injury because strangulation may leave no marks and victims may appear to have no injuries."  House Research Organization, Bill Analysis, Tex. H.B. 2066, 81st Leg., R.S. (2009).  However, this statement occurred in the section titled "SUPPORTERS SAY."  *Id*.  The "Digest" section states "HB 2066 would make assault a third-degree felony if committed by strangulation or suffocation against someone with whom the defendant had a dating relationship . . . ."  *Id*.  The Texas Court of Criminal Appeals has instructed that we are bound to give effect to the plain meaning of statutory language as "the best indicator of legislative intent."  *Shipp v. State*, 331 S.W.3d 433, 437 (Tex. Crim. App. 2011).  The plain language of the statute is clear.  Bodily injury is an element of assault (family violence) by occlusion.  *See* TEX. PENAL CODE ANN. § 22.01 (West 2011).

Section 22.01 of the Texas Penal Code describes assault (family violence) by occlusion as assault with the two additional requirements that it be committed against a family member and be

11

committed by occlusion.   *See* TEX. PENAL CODE ANN. § 22.01.   The following is a comparison of the statutory elements of assault (family violence) by occlusion and assault:

**Assault (Family Violence) By Occlusion Essential Elements**

1) "a person"
2) "intentionally, knowingly or recklessly"
3) "causes bodily injury to another, including the person's spouse" § 22.01(a)(1)
4) "the offense is committed against a person whose relationship . . . with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code; . . . ."   § 22.01(b-1)(1)
5) "the offense is committed by intentionally, knowingly or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth."   § 22.01(b-1)(3)

**Assault Essential Elements**

1) "a person"
2) "intentionally, knowingly or recklessly"
3) "causes bodily injury to another, including the person's spouse."

*Compare* TEX. PENAL CODE ANN. § 22.01(a) *with* TEX. PENAL CODE ANN. § 22.01(a), (b)(2)(B).

As demonstrated by the above comparison, assault is established by proof of the same or less than all the facts required to establish the commission of assault (family violence) by occlusion.

The State argues "the allegations in the indictment of impeding the normal breathing or circulation of the blood of the victim" preclude assault from being a lesser included offense.[9]   In *Hall*, the Texas Court of Criminal Appeals explained, "[W]e consider only the statutory elements

---

[9]The State also cites *Gibbs v. State*, 819 S.W.2d 821, 832 (Tex. Crim. App. 1991), for the proposition that the fact that it proved a lesser offense does not entitle Harrison to a charge on the lesser included offense.   First, we note that *Gibbs* was decided before the Texas Court of Criminal Appeals adopted the "cognate-pleadings" test in *Hall*, and we also note that *Gibbs* was decided based on a conclusion that there was no evidence if the defendant was guilty, he was guilty only of the lesser included offense.   *Id.*

of murder as they were modified by the particular allegations in the indictment." *Hall*, 225 S.W.3d at 536. We do not consider the evidence presented at trial. The indictment alleges as follows:

> did then and there intentionally, knowingly, or recklessly cause bodily injury to <u>Emily Cochran</u>, a person with whom the defendant <u>member of Defendant's household</u>, as described by Section 71.005, Family Code, by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the said, <u>Emily Cochran</u>, by <u>applying pressure to the throat or neck of the said Emily Cochran</u>.

Although the State alleged occlusion, the State also alleged "bodily injury." Both bodily injury and occlusion are statutory elements of assault (family violence) by occlusion. The indictment only modifies the statutory elements of assault (family violence) by occlusion by restricting itself to the statutory manner and means of "applying pressure to the person's throat or neck" when the statute also contains the statutory manner and means of "blocking the person's nose or mouth." *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(B). The allegations in the indictment did not modify any of the essential elements of assault. The allegations merely restricted the State to one of the two statutory manner and means of assault (family violence) by occlusion. The first step of the *Hall* analysis has been met—assault is a lesser included offense of assault (family violence) by occlusion.

The State alternatively argues the second step of the *Hall* test has not been met. According to the State, the record does not contain evidence from which a jury could rationally acquit Harrison of assault (family violence) by occlusion while convicting him of assault.

13

The existence of some evidence, "within or without the defendant's testimony, which raised the lesser included offense controls the issue of whether an instruction on the lesser included offense should be given." *Jones v. State*, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998). the evidence can be "strong or weak, unimpeached or contradicted." *Id*. "The evidence must establish the lesser-included offense as a valid rational alternative to the charged offense." *Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex. Crim. App. 2000).

The Texas Court of Criminal Appeals has instructed: "[i]t is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. Rather, there must be some evidence directly germane to a lesser included offense for the factfinder to consider before an instruction on a lesser-included offense is warranted." *Cantu v. State*, 939 S.W.2d 627, 646 (Tex. Crim. App. 1997). "Affirmative evidence" which is "directly germane" to the existence of the lesser included offense is required. *Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003) (failure to find or retrieve knife not "affirmative evidence" no knife used during assault). "Affirmative evidence," though, can exist in the absence of direct evidence. *Goad v. State*, 354 S.W.3d 443, 448 (Tex. Crim. App. 2011) (finding circumstantial evidence of intent to be "affirmative evidence"). A witness' answers during cross-examination may create conflicts in testimony. *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007) (questions on cross-examination cannot, by themselves, raise disputed fact issue). The record need only

14

contain "more than a scintilla" of affirmative evidence,[10] and we may not consider the credibility of the evidence.[11]

To be entitled to a lesser included offense charge, there must be some evidence from which a rational jury could acquit Harrison of the greater charge of assault (family violence) by occlusion while convicting him of the lesser included charge of misdemeanor assault. *Hall v. State*, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005). According to Harrison, the jury could have rationally found that he did not choke Cochran and find him not guilty of the greater offense but guilty of the misdemeanor assault.

Harrison argues the record contains some evidence Cochran did not originally claim she was choked, her trial testimony was inconsistent with her written statement, and there was some evidence of other bodily injury.[12] The choking was not mentioned in the initial offense report or in the application for a protective order. Cochran's signed statement was admitted into evidence as a defense exhibit. She admitted her statement states that Harrison stormed out of the room, but she had testified she passed out while being choked and when she awoke, Harrison was no longer in the room. Cochran also admitted that her statement does not mention "blacking out" from the

---

[10]*Schmidt v. State*, 278 S.W.3d 353, 364 (Tex. Crim. App. 2009).

[11]*Goad*, 354 S.W.3d at 446.

[12]We note the record contains evidence of bodily injury in addition to the alleged choking. Cochran testified Harrison "punched me in my right eye," "hit me in the back of my left side on my head," and kicked her in the side. Cochran also testified that she felt pain in the eye and back of the head. Scotty Taylor, a deputy with the Bowie County Sheriff's Office, testified that he observed a bruise around the victim's right eye and the victim stated she was "hit by Mr. Harrison with a closed fist."

15

choking. Paula Cochran,[13] an investigator with the Bowie County Sheriff's Office, testified none of four reasons listed on the protective order mention choking and admitted that it would be important to note choking on the protective order because choking is a more severe offense than merely hitting. Investigator Cochran testified she did not observe any marking around the neck. Taylor testified Emily Cochran did not mention choking as far as he could recall but did mention the defendant put his hands around her neck.

Emily Cochran, though, asserted she had told the police officers about the choking. Cochran testified she wrote out most of the statement herself and listed what seemed to her were the most serious acts. On redirect, Investigator Cochran testified the victim's statement includes the allegation that Harrison "put his hands around [the victim's] throat." Investigator Cochran testified, "I don't recall if she wrote it in her statement. She did tell me that he had -- she could not breathe when he was putting his hands around her neck during the altercation."

The cross-examination did not establish a conflict in the evidence, but merely created a mere suggestion that Cochran was not choked. At best, the cross-examination created factual disputes concerning whether Cochran "blacked out" or whether Harrison stormed out of the room. Neither fact is directly germane to the lesser included offense. There is only a suggestion or surmise that Cochran was not actually choked. Because there is less than a scintilla of affirmative evidence that Cochran was not choked, the second step of the *Hall* test has not been met. The trial court did not err in denying a lesser included charge on assault.

---

[13]Investigator Cochran testified she is not related to Emily Cochran, the victim.

16

For the reasons stated, we affirm, as modified.

Jack Carter
Justice

Date Submitted: April 10, 2012
Date Decided: May 18, 2012

Do Not Publish